UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JAMES MCKAY,                                    :
    Plaintiff,                              :
                                                :
v.                                              :      3:05-cv-1936 (WWE)
                                                :
CONNECTICUT NATURAL GAS, INC.,                  :
CONNECTICUT NATURAL GAS, INC.'S                 :
2002 VOLUNTARY EARLY RETIREMENT,                :
    Defendants.                             :

**MEMORANDUM OF DECISION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In this action, plaintiff James McKay alleges that defendants Connecticut Natural Gas ("CNG") and CNG's 2002 Voluntary Early Retirement Program violated the Employee Retirement Income Security Act ("ERISA") by failing to disclose that CNG was considering offering a voluntary early retirement program.

Defendants have moved for summary judgment. For the following reasons, the motion for summary judgment will be granted.

**BACKGROUND**

The parties have submitted briefs, a stipulation of facts and supporting exhibits, which reflect the following factual background.

<u>CNG's Development of the Voluntary Early Retirement Plan ("VERP")</u>

Defendant CNG is a gas and electric utility company operating in Connecticut. In 2000, CNG was acquired by the ENERGY East Corporation ("Energy East"), which also acquired Southern Connecticut Gas, Central Maine and Berkshire Gas.

In 2002, Energy East acquired Rochester Gas and Electric ("RG&E"). After

1

completion of the merger with RG&E, Energy East commenced integration of the various companies with a program named "Integrating EExcellence."

In April 2002, the operating companies began forming the Integrating EExcellence Team, which consisted of employees from each operating company. The Team held its first organizational meeting in Portland, Maine. The Team first developed a plan for functional integration and then started to consider integration of the workforce.

In September 2002, Towers Perrin, the company's auditor, was asked to prepare financial information relating to workforce management options including voluntary and involuntary employee reductions. On October 1, 2002, he presented the Team with several plans for workforce management.

On November 1, 2002, CNG announced the VERP to its employees.

Plaintiff's Retirement Planning

Plaintiff was employed by CNG from February 1966 until he retired on February 1, 2002. Prior to his retirement, plaintiff had worked as a dispatch analyst and was responsible for handling emergency and maintenance calls. Plaintiff was 59 years old when he retired.

In 1997, plaintiff had reached the minimum retirement age under CNG's retirement plan and began to inquire about what his retirement benefit would be if he were to retire that year or in subsequent years. He asked Kelly Quebman, who was a benefits specialist with CNG until 1999, about early retirement packages. Ms. Quebman answered that she did not know of any early retirement package.

In March 2001, plaintiff asked Brian Welch, then a Human Resources Manager,

whether CNG had any early retirement program. Mr. Welch responded that he did not know of one.

On August 31, 2001, McKay notified CNG of his intention to retire effective November 1, 2001. Plaintiff had decided to retire before he turned 62 years old because he had not learned of any early retirement package, and because a cap on retiree medical insurance would become effective by March 1, 2002.

In October 2001, plaintiff asked Marcy Wright, a CNG Benefit Analyst, about his benefits and a severance package. Plaintiff believed that Wright had indicated that there would not be a retirement package in 2002, but that she would let him know if something arose.

Prior to signing his retirement papers in November 2001, plaintiff discussed the possibility of an early retirement package with his supervisor Glen Branciforte and his coworkers. Branciforte told plaintiff that he was not aware of any offering.

On November 11, 2001, while he was signing his retirement papers, plaintiff asked HR Senior Benefits Specialist Jeff Hall if there was a possibility of any early retirement package. Hall indicated that there would be no 2002 retirement package but that he would let plaintiff know if something came up in the future.

Plaintiff asserts that, in late 2001, he telephoned Chris Malone, Manager of Customer Service in the Dispatch Office, to ask him if an early retirement package was offered, and that Malone responded that he had heard of nothing.

In late 2001, plaintiff also sent an email to James Laurito, President of CNG, inquiring whether CNG had any plans to match non-union benefits to union benefits, particularly with respect to early retirement benefits. Plaintiff asserts that Laurito never

3

responded to his email.

Plaintiff's last day of work was December 14, 2001, and he received his first retirement check the week of February 1, 2002.

After plaintiff learned of the VERP offered in fall 2002, he wrote an email to Laurito and Welch, requesting that his retirement benefits match the VERP. Defendant CNG responded that plaintiff was not eligible to receive benefits under the VERP because the VERP had been considered at the time of his retirement.

**DISCUSSION**

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir. 1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Liberty Lobby, 477 U.S. at 24.

4

Plaintiff asserts that defendants are liable for breach of fiduciary duty owed pursuant to ERISA, 29 U.S.C. § 1001, based on the alleged misrepresentation that an early retirement package would not be offered in 2002.

ERISA imposes a fiduciary duty on employers with retirement plans to act "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104. A plan administrator may not make affirmative material misrepresentations about proposed future changes to an employee benefit plan. Mullins v. Pfizer, Inc., 23 F.3d 663, 669 (2d Cir. 1994). Where an ERISA fiduciary makes guarantees regarding future benefits that misrepresent present facts, the misrepresentations are material if they would induce a reasonable person to rely upon them. Ballone v. Eastman Kodak Co., 109 F.3d 117, 122-123 (2d Cir. 1997). An ERISA fiduciary has "a duty to deal fairly and honestly with its beneficiaries" and may be held liable for a breach of fiduciary duty for a false assurance as to a future benefit regardless of whether a certain plan is under serious consideration. Caputo v. Pfizer, Inc., 267 F.3d 181, 192 (2d Cir. 2001). A misprediction is not actionable but "false statements about future benefits may be material if couched as a guarantee, especially where, . . . the guarantee is supported by specific statements of fact." Ballone, 109 F.3d at 125.

Ballone established that the materiality of an alleged misrepresentation should be considered according to a fact-specific inquiry, including: (1) how significantly the statement misrepresents the present status of internal deliberations regarding future plan changes; (2) whether the employee was aware of other information or statements from the company tending to minimize the importance of the misrepresentation or should have been so aware; and (3) the specificity of the assurance. Id.

5

Construing the inferences of fact most favorably to plaintiff, plaintiff was informed by Human Resources personnel that there would no retirement package offered in 2002 in the months prior to his decision to retire and signing retirement papers in November 2001. In Caputo, the Second Circuit held that genuine issues of fact existed as whether a material misrepresentation had occurred where the plaintiffs claimed that specific representations had been made about future golden handshake plans that, if true, would have been known to be false.[1]  267 F.3d at 192.  However, in this instance, no evidence indicates that the asserted statements misrepresented the "present status of deliberations," since defendant CNG did not begin to consider workforce reductions until after the 2002 merger, more specifically in April 2002.  Further, Hall's and Wright's representations cannot be considered to be so specific as to assure plaintiff that no plan would ever be offered in the future in light of both Wright's and Hall's statements that they would let him know if anything came up.  Quebman and Welch represented that they did not know of any retirement package offering, which cannot, in this instance, be construed as a specific misrepresentation of the "present status of deliberations."

Plaintiff's knowledge minimized any appearance of a categorical assurance that no retirement package offering was possible:  As he testified during his deposition, plaintiff knew that CNG had offered retirement packages twice in the 1990s, and that the purchase of CNG by Energy East could result in downsizing efforts and a retirement package offering.  Accordingly, plaintiff was aware that a retirement package offering

---

[1]The Second Circuit noted that defendant's denial of asserted statements created a genuine issue of material fact.

could be plausible sometime in the future, although no one knew at the time of his inquiries if and when such offering would occur. Thus, the Court cannot find that defendants materially misrepresented to plaintiff that there would be no early retirement package offered in 2002. Summary judgment will enter in favor of defendants.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion for summary judgment [Doc. # 49].

The Clerk is instructed to close this case.

Dated at Bridgeport, Connecticut, this _26th__th day of September, 2008.

/s/
Warren W. Eginton
Senior United States District Judge